1 | G. Thomas Martin, III, Esq. (SBN 218456)
2 | Nicholas J. Bontrager, Esq. (SBN 252114)
  | **MARTIN & BONTRAGER, APC**
3 | 6565 W. Sunset Blvd., Suite 410
4 | Los Angeles, CA 90028
  | Telephone: 323.940.1697
5 | Facsimile: 323.328.8095
6 | tom@mblawapc.com
  | Attorney for Plaintiff
7 | ANDREW FAIN

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA -
10

| | |
|---|---|
| ANDREW FAIN,<br>        Plaintiff,<br>   vs.<br><br>BANK OF AMERICA, N.A.; and DOES 1 to 10, inclusive<br><br>        Defendant(s). | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL FOR:**<br><br>**1. AIDING AND ABETTING VIOLATION OF DEFERRED DEPOSIT TRANSACTION LAW (CAL. FIN. CODE § 23000 ET. SEQ.) ;**<br>**2. VIOLATION OF UNFAIR COMPETITION LAW (BUS. & PROF. CODE § 17200 ET. SEQ.);**<br>**3. VIOLATION OF ELECTRONIC FUNDS TRANSFER ACT, 15 U.S.C. § 1693, ET. SEQ.** |

## COMPLAINT FOR DAMAGES
### INTRODUCTION

1.    Andrew Fain (Plaintiff) brings this action to secure redress from BANK OF AMERICA, N.A., a national association (hereinafter "Defendant" or

"Bank of America") for violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, the California Deferred Deposit Transaction Law, California Financial Code § 23000 *et. seq.* and violations of Business and Professions Code § 17200.

## JURISDICTION

2. Jurisdiction of this court arises pursuant to Jurisdiction is conferred on this Court by Title 28 U.S.C. §1331 and §1693 *et seq*.

## VENUE

3. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §1391 (b) and (c), as the unlawful practices alleged herein took place in Los Angeles County, California, and the Defendant is a Corporation who transacts business in Los Angeles County, California, and the transaction that is the basis of Plaintiff's Complaint occurred within the District and venue, therefore, properly lies in this Court.

## PARTIES

4. Plaintiff, Andrew Fain, is a natural person who resides in Valencia, Los Angeles County, California. Plaintiff has a bank account and a debit card issued by the Defendant. Plaintiff has been the sole owner of the account in question during the entire duration of unauthorized transfers in this claim.

5. Upon information and belief the Defendant, BANK OF AMERICA, N.A., a national association, is doing business in Los Angeles County, California, and has its principal place of business the city of Charlotte, Mecklenburg County, North Carolina. Defendant issued a debit card to Plaintiff which permitted Plaintiff to withdraw funds from her Bank of America account (using her Personal Identification Number) as well as make point of sale transactions.

6. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

7. Defendant BANK OF AMERICA has formed business relationships with payday lenders such as AMERICAN WEB LOAN and MAXLEND (hereinafter, "TRIBAL PAYDAY LENDERS") who engage in unlawful and deceptive business practices in an attempt to avoid California laws regulating the provision of deferred deposit loans (also known as "payday loans") to customers in California. Each of these unlicensed payday lenders originate payday loans in violation of California law and California's constitutional ban on usury because of their unconscionable interest rates, which exceed 600% percent APR.

8. Defendant BANK OF AMERICA has formed business relationships with payday lenders such as SPEEDY CASH and CHECK CITY (hereinafter, "NON-TRIBAL PAYDAY LENDERS") who engage in unlawful and deceptive business practices in an attempt to avoid California laws regulating the provision of deferred deposit loans (also known as "payday loans") to customers in California. Each of these payday lenders originate payday loans in violation of California law and California's constitutional ban on usury because of their unconscionable interest rates, which exceed 700 % APR.

9. Defendant BANK OF AMERICA aids and abets these payday lenders' violations of California's consumer protection laws, and these business relationships serve to circumvent California's restrictions on interest and fees. Defendant BANK OF AMERICA makes incredible profit in overdraft fees charged for defaulted loan obligations on payday loans that are originated and made in violation of California law. The usurious, illegal interest charged by these payday lenders induces high rates of defaults and far increased overdraft fees, all of which inure to the bank's tremendous economic advantage, gained through participation in unfair competition.

10. Although the Bank is repeatedly put on notice of the illegality and void nature of the payday loans, and *of the Bank's role in arranging, acting as an agent for, or assisting deferred deposit originators in making loans which*

*do not comply in full with the Deferred Deposit Transaction Law*, the Bank repeatedly ignored demands to return the illegally originated and unauthorized funds, all in violation of the *California Deferred Deposit Transaction Law*, *Business and Professions Code 17200*, and the Electronic Funds Transfer Act, 15 USC 1693 *et seq.* and *Regulation E*,.

11. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, the Defendant BANK OF AMERICA, the TRIBAL PAYDAY LENDERS, and the NON-TRIBAL PAYDAY LENDERS, were acting on behalf of and as the agent and/or representative of each other and with the consent, knowledge and permission of each other, and were acting within the scope and purpose of said agency, authority and/or representation. Plaintiff is also informed and believes, and thereon alleges, that Defendant BANK OF AMERICA acted in concert, participated in and aided and abetted in the unlawful business practices alleged herein. Plaintiff is also informed and believes, and thereon alleges, that Defendants sued herein as Does, and each of them, acted in concert, participated in and aided and abetted in the unlawful business practices alleged herein, or are in some manner responsible for the unlawful business practices alleged herein. Therefore, Bank of America is directly and/or vicariously liable for the conduct of the TRIBAL LENDERS and the NON-TRIBAL LENDERS, and for the conduct of the other Defendants sued herein as Does.

## INTRODUCTION AND BACKGROUND
## California State Laws Protecting Consumers Who Take Out Payday Loans

12. Many states have enacted laws that govern the terms of small-dollar consumer loans, including laws that restrict which entities may engage in these transactions, require lenders to be licensed or otherwise subject to state regulation, and impose civil and criminal usury limits.

13. Those laws reflect the states' strong public policies that loans breaching those restrictions pose significant harm to state residents.

14. The State of California, by Section 1 of Article XV of the California Constitution, prohibits usury and deems to be usurious interest rates on personal loans that exceed ten percent per annum. Persons who lawfully offer loans or broker the offering of loans pursuant to the *California Deferred Deposit Transactions Law* (the "CDDTL") are exempt from the California Constitution's usury prohibition.

15. However, in order to qualify for exemption from constitutional bans on usury, lenders must *lawfully* offer loans that are compliant with the CDDTL. The State of California regulates originators of payday loans through the *California Deferred Deposit Transaction Law, Financial Code* sections 23000 *et seq.*

16. Payday loans are loan arrangements whereby the consumer provides the lender with access to funds in the consumer's checking account, typically by giving the lender a post-dated check that the lender agrees to cash at a later specified date. The consumer in turn receives the value of the check less fees charged by the lender, and these fees take the place of interest charges.

17. The provisions of the *California Deferred Deposit Transaction Law* require payday loan originator who operate in California to obtain licenses to do business from the California Department of Business Oversight and to conduct their business of payday lending in accordance with the provisions of the law. These provisions place limits, *inter alia,* on the duration of payday loans, the fees that may be charged on payday loans, the amount of money that may be lent on any single payday loan, and the advertisements that may be made concerning payday loans. The *California Deferred Deposit Transaction Law* also prohibits an entity in California from offering,

arranging, acting as an agent for, or assisting a deferred deposit originator from making payday loans unless the loans made comply in full with the Deferred Deposit Transaction Law.

### California Interest-Rate Caps

18. To deter violations of such laws and redress consumer harm, several states have adopted laws that render payday loans void if they exceed the usury limit. If a lender makes a covered loan that exceeds the usury limit in these states, the lender has no legal right to collect money from consumers in repayment of the loan.

19. In California, the CDDTL is codified at *Cal. Fin. Code* §§ 23000 to 23106. Under the CCDTL, the maximum allowable APR for a 14-day loan is 459%. As such, any payday loan made in excess of this maximum allowable APR is void. *See*, *Cal. Fin. Code* § 23060, which states in pertinent part:

> (a) If any amount other than, or in excess of, the charges or fees permitted by this division is willfully charged, contracted for, or received, a deferred deposit transaction contract shall be void, and no person shall have any right to collect or receive the principal amount provided in the deferred deposit transaction, any charges, or fees in connection with the transaction;
>
> (b) If any provision of this division is willfully violated in the making or collection of a deferred deposit transaction, the deferred deposit transaction contract shall be void, and no person shall have any right to collect or receive any amount provided in the deferred deposit transaction, any charges, or fees in connection with the transaction.

### California Licensing Requirements

20. Many states have also implemented licensing regimes that include measures aimed at preventing and penalizing harmful consumer-lending practices by payday lenders. Those state-licensing regimes reflect substantive consumer-protection concerns and reflect the states' strong public policy that entities seeking to engage in the consumer-lending business with state residents must be

- 6 -

COMPLAINT FOR DAMAGES

vetted and subject to oversight by regulators to ensure that they adhere to consumer-protection and other laws.

21. To incentivize licensure and redress consumer harm, several states have adopted laws that render small-dollar loans void if they are made without a license. If a covered loan is made without a license in these states, the entity has no right to collect from consumers, or the consumers have no obligation to pay money in repayment of the loan.

22. Under the *California Deferred Deposit Transaction Law*, *Cal. Fin. Code §§ 23000 to 23106*, any person that offers, originates or makes a deferred deposit transaction, arranges a deferred deposit for a deferred deposit originator, acts as an agent for a deferred deposit originator, or assists a deferred deposit originator in the origination of a deferred deposit in California is required to obtain a license from the California Department of Business Oversight.

23. Any person located in California, who plans to engage in the business of making deferred deposit transactions over the internet only to residents in other states, is also required to obtain a license from the California Department of Business Oversight. Additionally, any person located outside of California who plans to engage in the business of making deferred deposit transactions over the internet to residents in California and to residents in other states, is required to obtain a license from the California Department of Business Oversight.

24. Additionally, *California Financial Code* § 23013(a) requires all licensees to maintain a surety bond in accordance with this subdivision in the amount of twenty-five thousand dollars ($25,000). The bond shall be payable to the commissioner and issued by an insurer authorized to do business in this state. A copy of the bond, including any and all riders and endorsements executed subsequent to the effective date of the bond, shall be filed with the commissioner for review and approval within 10 days of execution. For licensees with multiple

licensed locations, only one surety bond in the amount of twenty-five thousand dollars ($25,000) is required. The bond shall be used for the recovery of expenses, fines, and fees levied by the commissioner in accordance with this division or for losses or damages incurred by consumers as the result of a licensee's noncompliance with the requirements of this division.

25. Under the CCDTL, *California Financial Code* § 23005 states in pertinent part that:

> (a) No person shall offer, originate, or make a deferred deposit transaction, arrange a deferred deposit transaction for a deferred deposit originator, act as an agent for a deferred deposit originator, or assist a deferred deposit originator in the origination of a deferred deposit transaction without first obtaining a license from the commissioner and complying with the provisions of this division.

26. Finally, under the CCDTL, *California Financial Code* § 23064 contains a cumulative civil remedy for any person who is injured by any violation of this division:

> 23064.  Any person who is injured by any violation of this division may bring an action for the recovery of damages, an equity proceeding to restrain and enjoin those violations, or both. The amount awarded may be up to three times the damages actually incurred, but in no event less than the amount paid by the aggrieved consumer to a person subject to this section. If the plaintiff prevails, the plaintiff shall be awarded reasonable attorney's fees and costs. If a court determines by clear and convincing evidence that a breach or violation was willful, the court, in its discretion, may award punitive damages in addition to the amounts set forth above.  Upon application, the court may also grant any equitable relief that it deems proper, including, but not limited to, a claim for restitution and disgorgement.

> 23064.5.  The rights, remedies, and penalties established by this division are cumulative to the rights, remedies, or penalties established under other

laws. It is not necessary to exhaust administrative remedies in order to pursue the civil remedies provided for in this act.

## **Electronic Funds Transfer Act Requirements**

27. Under the Electronic Funds Transfer Act, codified as 15 U.S.C. §1693f(a) provides, in relevant part, as follows:

> (a) Notification to financial institution of error
> If a financial institution, within sixty days after having transmitted to a consumer documentation pursuant to section 1693d (a), (c), or (d) of this title or notification pursuant to section 1693d (b) of this title, receives oral or written notice in which the consumer—
> (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;
> (2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to section 1693d (b) of this title, the consumer's account, contains an error and the amount of such error; and
> (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred, the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. The financial institution may require written confirmation to be provided to it within ten business days of an oral notification of error if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent. A financial institution which requires written confirmation in accordance with the previous sentence need not provisionally recredit a consumer's account in accordance with subsection (c) of this section, nor shall the financial institution be liable under subsection (e) of this section if the written confirmation

- 9 -

COMPLAINT FOR DAMAGES

is not received within the ten-day period referred to in the previous sentence.

28. A "consumer" is defined by 15 U.S.C. §1693a(5) as a "natural person".

29. Should the financial institution find that an error did not occur after an investigation pursuant to subsection (a) or (c), 15 U.S.C. §1693(d) provides:

> If the financial institution determines after its investigation pursuant to subsection (a) or (c) of this section that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. The financial institution shall include notice of the right to request reproductions with the explanation of its findings.

30. A plaintiff is entitled to treble damages, pursuant to 15 U.S.C. §1693(e), if:

> in any action under section 1693m of this title, the court finds that—
> (1) the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c) of this section, and the financial institution
>     (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error; or

31. Pursuant to 15 U.S.C. §1693(f), the following "acts" constitute error:

> For the purpose of this section, an error consists of—
> (1) *an unauthorized electronic fund transfer*;
> (2) an incorrect electronic fund transfer from or to the consumer's account
> (3) the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included;
> (4) a computational error by the financial institution;
> (5) the consumer's receipt of an incorrect amount of money from an electronic terminal;
> (6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this subchapter; or
> (7) any other error described in regulations of the Board.

(emphasis added).

## FACTUAL ALLEGATIONS

32. Plaintiff repeats and incorporates by reference herein the allegations set forth above at Paragraphs 1-31, *supra*.

33. Within the last year, Plaintiff took out payday loans from the TRIBAL LENDERS and the NON-TRIBAL LENDERS.

34. On information and belief, the payday loan agreement Plaintiff executed with American Web Loan on April 13, 2014 violated the CDDTL by allowing American Web Loan to charge an APR of 757.75 % to Plaintiff, far above the maximum allowable rate of 459%. See Exhibit "1A".

35. On information and belief, the payday loan agreement Plaintiff executed with Maxlend violated the CDDTL by allowing Maxlend to charge an APR of to Plaintiff, far above the maximum allowable rate of 651.89 %. See Exhibit "1B."

36. On information and belief, the payday loan agreement Plaintiff executed with Speedy Cash violated the CDDTL by allowing Check City to charge an APR of 805.19%, far above the maximum allowable rate of 459%. (See Exhibit

"1C".)

37. On information and belief, the payday loan agreement Plaintiff executed with Check City violated the CDDTL by allowing Check City to charge an APR of 715.69%, far above the maximum allowable rate of 459%. (See Exhibit "1D.").

38. On information and belief, Plaintiff's payday loan contracts with the TRIBAL LENDERS and the NON-TRIBAL LENDERS are void as a matter of law.

39. On information and belief, the TRIBAL LENDERS do not hold licenses in California to originate payday loans to California consumers and have therefore illegally originated payday loans to California consumers in violation of *California Financial Code* § 23005.

40. On or about August 12, 2014, Plaintiff provided written disputes, along with an affidavit, to Defendant Bank of America advising that the payday loans which Plaintiff took out with the TRIBAL LENDERS were illegal and therefore void, unforceable and unauthorized, and, directing Defendant Bank of America to replace all funds electronically transferred from Plaintiff's Bank of America account to each of these lenders. See Exhibit 2. Specifically, each of the disputes and instructions to the Bank read as follows:

> To Whom It May Concern,
>
> I am writing to instruct you to replace all funds electronically transferred from my account to or on behalf of my lender, _____, within the past 180 days. Those transfers were "unauthorized" under the Electronic Fund Transfer Act, 15 USC 1601 et seq. ("EFTA") and Federal Reserve Board Regulation E. Under Regulation E, you are required to replace the transferred funds within ten days.
>
> Regulation E requires banks to replace all unauthorized electronic transfers from a customer's account for a minimum of 60 days prior to the customer's last bank statement. When a loan contract is illegal because the lender is not licensed in the customer's state or is charging rates and fees in excess of state lending laws, the customer's authorization of the lender to debit

> his or her account is void, invalid and unenforceable and the customer's bank is required to replace the transferred funds.
>
> My lender, _____, was not a licensed lender in this state and charged me interest and fees in excess of the legal limits in this state. Accordingly, my loan contract is void, invalid and unenforceable, my lender's electronic fund transfers from my account were *unauthorized,* and Bank Of America, NA is obligated to replace the transferred funds.
>
> Please credit my account immediately for all unauthorized debits made during the past 180 days. Any and all pre-authorizations or authorizations of automatic transfers from my account by or on behalf of my lender American Web Loan are hereby *revoked.* Please stop any and all future attempts of my lender American Web Loan to transfer funds from my account.

41. Defendant Bank of America received Plaintiff's disputes and assigned claim numbers to Plaintiff's disputed transactions with the TRIBAL LENDERS.

42. On or about August 27, 2014, Defendant Bank of America sent correspondence to Plaintiff regarding Plaintiff's above-referenced disputes, assigned claim number # 140827107487 and a written statement of unauthorized ACH debits for five (5) debits by American Web Loan from Plaintiff's Bank of America accounts.

43. On or about September 25, 2014, Plaintiff caused further dispute correspondence to be sent to Defendant regarding Bank of America Claim Number # 140801110937, in which Plaintiff further advised that Plaintiff's agreements with Speedy Cash were illegal and unenforceable in the State of California, and that all of Plaintiff's transactions with Speedy Cash were void, unenforceable and unauthorized, and demanding that all funds electronically transferred from Plaintiff's bank account to Speedy Cash be returned and replaced. See Exhibit 3.

44. On or about October 8, 2014, Plaintiff received three letters from Bank of America regarding Bank of America Claim Number # 140801110937, in which Defendant Bank of America denied Plaintiff's disputes, stating only that "no posting error has occurred on your account".

45. On or about October 10, 2014, Plaintiff received correspondence from